**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLORADO**

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| GREGORY D. SCOTT, | ) | Case No. 17-16886 EEB |
| CONSTANCE L. SCOTT, | ) | Chapter 13 |
| Debtors. | ) | |
| | ) | |
| | ) | |
| EBERHART FAMILY TRUST, | ) | |
| Movant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GREGORY D. SCOTT, | ) | |
| CONSTANCE L. SCOTT, | ) | |
| DOUGLAS B. KEIL, Chapter 13 Trustee, | ) | |
| Respondents. | ) | |

**MOTION FOR RELIEF FROM STAY**

The EBERHART FAMILY TRUST ("Eberhart Trust"), through its undersigned counsel, respectfully moves this Court for Relief From the Automatic Stay, and states as follows:

1. Gregory D. Scott and Constance L. Scott ("Debtors") filed for relief under Chapter 13 of Title 11 of the United States Code ("Bankruptcy Code") on May 13, 2014 ("Petition Date").

2. Douglas B. Keil is the duly appointed Chapter 13 Trustee of the Debtor's bankruptcy estate.

3. The Debtors are repeat filers. The Debtors previously filed for relief under Chapter 13 on May 13, 2014, Case No. 14-16606 EEB.

4. On July 26, 2017, this Court dismissed their prior bankruptcy case based upon the Chapter 13 Trustee's Motion to Dismiss following the Debtors' default in their plan payments. *See Case No. 14-16606 EEB, Docket No. 162.*

5. The Debtors filed their Verified Motion for Continuance of Automatic Stay Pursuant to 11 U.S.C. § 362(c)(3)(B) (Docket No. 15) on August 3, 2017. The Eberhart Trust filed its Objection to Verified motion for Continuation of Automatic Stay Pursuant to 11 U.S.C. §362(c)(3)(B) (Docket No. 23) on August 21, 2017.

6. The Court held a hearing on the Verified Motion and Response on August 24, 2017. The Court denied Debtors' Verified Motion as to the Trust, stating: "The Section 362(a) stay with respect to any action taken by the Trust with respect its debt and property securing such debt will terminate with respect to the Debtor on the 30th day after the filing of this case." (Docket No. 27).

7. On or about December 9, 2010, the Debtors executed a Home Equity Line of Credit Promissory Note and Credit Agreement (the "Note") in favor of the Eberhart Trust Bank with a credit limit of $50,000. A copy of the Note is attached hereto as **Exhibit 1** and incorporated by this reference. Under the terms of the Note, the Debtors were required to make regular monthly payments according to a formula in the amount of $1,554.48 beginning January 10, 2013. The Note matured on November 10, 2015. *Exhibit 1, p.1.* With the accrued interest and costs through August 31, 2017, the Eberhart Trust asserts that the amount of indebtedness exceeds $65,359.09.

8. In connection with the Note, Debtors granted a Revolving Deed of Trust (the "Deed of Trust") to the Eberhart on real property known as 5417 5.4 Road, Alamosa, Colorado 81101 (the "Property"). A copy of the Deed of Trust is attached hereto as **Exhibit 2** and incorporated by this reference. The Deed of Trust was recorded with the Clerk and Recorder of Alamosa County, Colorado on December 16, 2010 at Reception Number 344205. *Id.*

9. The Eberhart Trust learned that the Debtors cancelled their insurance policy on the Property. Upon learning of such facts, the Eberhart Trust then paid for forced place insurance coverage for the Property as a secured Creditor under its Deed of Trust. A copy of the Farmers Insurance Policy Summary is attached hereto as **Exhibit 3**.

10. The Eberhart Trust also learned that the Debtors failed to pay the annual real estate taxes on the Property for the past four (4) years. Unpaid taxes create statutory liens against the Property. 11 U.S.C. §546. Such obligations are chargeable under the Eberhart Trust's Deed of Trust. A copy of the Alamosa County Treasurer Treasurers Receipt is attached hereto as **Exhibit 4**.

11. Prior to the Debtors' filing for relief, the Eberthart Trust commenced a foreclosure proceeding on its Deed of Trust. The Eberhart Trust submitted a Bid to the Public Trustee of Alamosa County itemizing all of the amounts due and owing. The Debtors filed for relief on the eve of the foreclosure sale by the Public Trustee for Alamosa County. The sale has been postponed during the pendency of this bankruptcy case.

12. The Eberhart Trust is lawfully entitled to foreclose upon the Property as a result of the Debtors' defaults of the Note and Deed of Trust, as well as their Plan. C.R.S. §38-38-101, *et. seq.*

13. Upon information and belief, FIA Card Services, N.A., may also claim an interest in the Property by virtue of a Transcript of Judgment recorded on or about December 13, 2010, at Reception Number 344188 for the amount of $5,225.16.

14. As of the Petition Date including the Eberhart Trust and the judgment lien, the total amount of encumbrances against the Property are approximately $70,584.25.

15. As of the Petition Date according to the Assessor of Alamosa County, Colorado, the Property has a value of approximately $143,777.

16. The Debtors value the Property at $150,000.00. *See Docket No. 1, Sch. D, p. 8.* As such, the Eberhart Trust's claim is oversecured. The Eberhart Trust is therefore entitled to post-petition, pre-confirmation interest, late fees, costs and its attorney's fees incurred in connection with this debt. *In re Gledhill*, 164 F.3d 1338, 1342 (10th Cir. 1999). *See also, United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989). Further, the Eberhart Trust's default interest rate of 18% is the proper rate to apply to its Allowed Secured Claim in this case. *See In re K & J Properties, Inc.*, 338 B.R. 450 (Bankr.D.Colo. 2005)(Campbell, J.)(Chapter 11 post-petition and post-confirmation interest at contractual rate).

17. Any equity that the Debtors have in the Property is being eroded by the interest on the Note and the expenses incurred by the Eberhart Trust.

18. As a result of the Debtors' pre and post-petition defaults, there is a lack of adequate protection of the Eberhart Trust's interest in the Property. The Eberhart Trust is therefore entitled to relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1).

19. The Trustee has or may claim an interest in and to said property and the Trustee has not cured the Debtors' default in the performance of the terms and conditions of the Note. The Eberhart Trust is therefore entitled to relief from stay pursuant to 11 U.S.C. § 362(d)(1).

20. The Eberhart Trust will apply all payments made by the Debtors under the Fourth Amended Plan to the balance remaining due and owing.

21. Because of the Debtors' default on the Note, the Eberhart Trust requests that the Court lift the 14-day stay of execution imposed by Fed.R.Bankr.P. 4001(a)(3).

22. Attached hereto as **Exhibit 5** is the affidavit of counsel for the Eberhart Trust in compliance with the provisions of the Servicemembers Civil Relief Act of 2003, 50 App.U.S.C. § 501 et seq. and L.B.R. 4001-1 dated May 14, 2014.

**WHEREFORE**, the Eberhart Trust respectfully requests that this Court enter an Order granting relief from stay, allowing the Eberhart Trust to enforce its security interest in the Property, as set forth above, pursuant to 11 U.S.C. § 362(d)(1), and for such other and further relief as to this Court may deem appropriate.

DATED this 1st day of September, 2017.

Respectfully submitted,
BUECHLER & GARBER, LLC

*/s/ Kenneth J. Buechler*

Kenneth J. Buechler, #30906
999 18th Street, Suite 1230-S
Denver, Colorado 80202
Tel: 720-381-0045
Fax: 720-381-0382
ken@bandglawoffice.com

**HOME EQUITY LINE OF CREDIT**
**PROMISSORY NOTE AND CREDIT AGREEMENT**

**BORROWER:**

**Gregory D. Scott**
**Constance L. Scott**
**5417 5.4 Road**
**Alamosa, CO 81101**

**LENDER:**

**Eberhart Family Trust**

**702 Galaxy Drive**
**Grand Junction, CO 81506**

**Date of Agreement: December 9, 2010**

**INTRODUCTION: This Promissory Note and Credit Agreement ("Agreement") controls and directs the making and administration of your Home Equity Line of Credit issued by the Eberhart Family Trust. In this Agreement, the words "you", "your", and "Borrower" mean each of you who signs this Agreement. This includes all Borrowers listed above. The words "we", "us", "our", and "Lender" mean the Eberhart Family Trust, its successors and/or assigns. The closing date is the date this Agreement is signed. The funding date is the date funds are disbursed for the initial mandatory advance, which is after the rescission period expires. You agree to the following terms and conditions.**

**PROMISE TO PAY: You promise to pay the Eberhart Family Trust, its successors and/or assigns, the total of all Credit Advances, Finance Charges, and other charges including all costs and expenses for which you are liable under this Agreement or under the Deed of Trust which secures your Home Equity Line of Credit. You will pay your Line of Credit in accordance with the payment terms set forth below. Each Borrower is jointly, severally and fully responsible under the terms of this Agreement. Each Borrower authorizes the other Borrower, on his or her signature alone, to cancel the Credit Line, to request and receive credit advances, and to do all other things necessary to carry out the terms of this agreement. We can release any of you from responsibility under this Agreement, and all others will remain responsible. Unless sooner paid, all amounts owing under the terms of this Credit Agreement shall be due and payable in full November 9, 2015.**

**SECURITY INTEREST/COLLATERAL: All sums due under this Home Equity Line of Credit, or amounts advanced or incurred pursuant to the terms of the Deed of Trust are secured by a Deed of trust dated December 9, 2010 granted by you for the benefit of the Eberhart Family Trust, it successors and/or assigns on property located at 5417 5.4 Road, Alamosa, Colorado 81101, Alamosa County, State of Colorado. This means we are taking a security interest in your home.**

**TERM: The term of your Home Equity Line of Credit will begin on the Funding Date of this Agreement and will continue until the Maturity Date of November 9, 1015.**

**SUBSEQUENT ADVANCES: After the initial advance, subsequent advances may be taken at any time within the draw period as explained below. Any subsequent advances must be in an amount of at least $500.00.**

**MINIMUM PAYMENT REQUIREMENTS: You may obtain credit advances during the period from the initial funding during the first twenty four (24) months after which time your loan will enter the "Repayment Period" during which time no further advances will be allowed. The payoff period may be less than the sixty months (60), or the maximum term of this Agreement, but it may never exceed the maximum term to the maturity. Monthly payments will be required during both the Draw period and the Repayment period. Your monthly due date will be on the 10th day of each month. Your monthly minimum payment during the draw period will be equal to the interest due on your daily outstanding balance at the Annual Percentage Rate of Seven (7.00%) for the previous calendar month.**

EXHIBIT 1

The monthly payment due during the Repayment period will be based on your outstanding balance at the end of your Draw Period, at the Annual Percentage Rate of Seven (7.00%) Percent amortized over the period of thirty six (36) months. Your payment will not change during the Repayment Period. You agree to continue making prompt monthly payments until the entire outstanding balance is paid in full.

**ALL PAYMENTS TO BE COMPLETED NO LATER THAN NOVEMBER 10, 2015**

**PAYMENT APPLICATION:** Payments will be applied to any Late Fees, Finance Charges, Billed Fees, other charges, and collection costs due before being applied to your unpaid balance. Lender has the exclusive right to determine when exceptions as to payment application will be made.

**CREDIT LIMIT:** This home Equity Line of Credit is a revolving line of credit in the principal amount previously stated which will be called your "Credit Limit" under this Agreement. During the Draw Period your requests for credit advances will be honored in accordance with the paragraph titled Lender's rights below. During the Draw Period, you may borrow against the Credit Line, repay any or all amounts borrowed and again borrow up to the amount of the Credit Limit. The maximum amount you may borrow under this Agreement at any one time is your Credit Limit. You agree not to request or attempt to obtain advances against your Credit Line which would exceed your Credit Limit. Should your Credit Limit be exceeded for any reason, you agree to immediately repay any amount in excess of the Credit Limit plus any additional interest due. We may at our option refuse credit advances for so long as the balance due exceeds your Credit Limit.

**LATE CHARGES:** Your payment is due on the 10th of each month and will be considered late if we do not receive it within 10 days after that date. If your payment is late, you will be charged a $15.00 late fee.

**CREDIT ADVANCES:** You give us permission to advance monies upon your telephone or written requests by any one of you who have signed this Agreement. All fund requested will be mailed to you immediately unless you request an emergency advance to be wired. There will be a wiring fee in that situation.

**WHEN FINANCE CHARGES BEGIN TO ACCRUE:** All finance charges will accrue on the Funding Date of your first draw and will begin to accrue upon each draw thereafter. The balance used to compute the Finance Charge is determined by using the Daily Balance method. We take the balance of your account each day after payments and credits have been subtracted and new advances and other debits have been added.

**LENDER'S RIGHTS:** We can terminate your Line of Credit account, require you to pay us the entire balance in one payment and may charge you certain fees if:

A. You engage in fraud or material misrepresentation at any time in connection with this Line of Credit, or
B. We reasonably believe your financial situation is such that you cannot fulfill the obligations of this plan, or
C. You are in default of any material obligation under this plan such as payment of interest, fees, charges, and transfer of ownership of home.

**FOREBEARANCE BY LENDER NOT A WAIVER:** Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy. We may accept late payments, partial payments or payments marked "payment in full" without losing any of our rights under this agreement.

**COLLECTION COSTS:** To the extent permitted by law, you agree to pay all reasonable costs of collection paid or incurred by us during the collection of any amounts owed under this Agreement, including reasonable attorney's fees not to exceed 15% of the unpaid debt after default.

**DEFAULT INTEREST RATE:** In the case of default, we may adjust the Annual Percentage Rate to 18%.

**CANCELLATION:** If you wish to cancel your right to future credit advances under this Agreement, you must notify us in writing of your intention. Cancellation of this Agreement may be accomplished by just one signer of the account. If you cancel your right to all future Advances, your obligation to perform under this Agreement and the Deed of Trust will remain in force until all amounts due are paid in full.

**PREPAYMENT:** Your Home Equity Line of Credit may be prepaid at any time in whole or in part without penalty. If you prepay your Line of Credit at any time during the Draw Period, you may take future draws But you may not take any draws after your Draw Period expires. Payments in excess of your Minimum Payment will not relieve you of your obligation to continue to make your monthly minimum payments.

**NOTICES:** We will send all notices to you at: 6512 Cramer Road, Alamosa, CO 81101 or, if we are notified In writing by you, your notices will be sent to 5417 5.4 Road, Alamosa, CO 81101.

**TRANSFER OR ASSIGNMENT:** Without prior notice or approval from you, we reserve the right to sell and/or transfer your Home Equity Line of Credit to another lender or person and to assign our rights under this Agreement and Deed of Trust. Your rights under this Agreement belong only to you and may not be transferred or assigned. However, your obligations are binding on your heirs and legal representatives.

**EACH BORROWER ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS HOME EQUITY LINE OF CREDIT PROMISSORY NOTE AND CREDIT AGREEMENT, AND EACH GRANTOR AGREES TO ITS TERMS.**

x [signature] Gregory D. Scott

Constance L. Scott [signature] Constance L. Scott

State of Colorado
County of Alamosa

On this day before me, a Notary Public, personally appeared GREGORY D. SCOTT AND CONSTANCE L. SCOTT to me known to be the individuals described in and who executed the Home Equity Line of Credit Promissory Note and Credit Agreement of their own free and voluntary act and deed, for the uses and purposes therein mentioned.

Given under my hand and official seal this 10 day of December, 2010.

By [signature] Residing at 5690 Rd. 10 So.
Alamosa, CO. 81101

Notary Public in and for the State of Colorado My commission expires 11/06/14



344205 12/16/2010 2:22 PM Melanie Woodward
1 of 3 DT R$21.00 D$0.00 Alamosa County Clerk

# REVOLVING CREDIT DEED OF TRUST

December 9, 2010

Gregory D. Scott and Constance L. Scott

Whose address is 5417 S 5.4 Road, Alamosa, Colorado 81101 (referred to below as "Grantor" and sometimes as "Borrower") Eberhart Family Trust whose address is 702 Galaxy Drive, Grand Junction, Colorado 81506 (referred to below sometimes as "Lender" and sometimes as "Beneficiary"), a Colorado Family Trust existing under the laws of the State of Colorado, and the Public Trustee of Alamosa County, Colorado (referred to below as "Trustee").

1. CONVEYANCE AND GRANT. For valuable consideration, Grantor hereby irrevocably grants, transfers, and assigns to Trustee for the benefit of Lender as Beneficiary, all of Grantor's right, title and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures, all easements, rights of way, and appurtenances; all water, water rights and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation any rights Grantor later acquires in the fee simple title to the land, subject to a lease, if any, and all minerals, oil gas, geothermal and similar matters, located in the County of Alamosa, State of Colorado )

South Half (½) of Tract Number Six (6) of small Farms Subdivision, located in the South one half (½) of the Northwest One Quarter (¼) of Section 36,Township 38 North, Range Nine (9) East, NMPM, in Alamosa County, Colorado

With an address known as 5417 S 5.4 Road, Alamosa, Colorado 81101

Grantor presently assigns to Lender (also known as Beneficiary in this Deed of Trust) all of Grantor's right, title and interest in and to all present and future leases of the Property.

2. DEFINITIONS. The following words shall have the following meanings when used in this Deed of Trust. Terms not otherwise defined in this Deed of Trust shall have the meanings attributed to such terms in the Colorado Uniform Commercial Code.

Beneficiary. The word "Beneficiary" means Eberhart Family Trust, its successors and assigns. Eberhart Family Trust also is referred to as "Lender" in this Deed of Trust.

Borrower. The word "Borrower" unless otherwise provided in this Deed of Trust, means the Grantor and means each and every person who signs the Home Equity Line of Credit secured by this Deed of Trust.

Credit Agreement. The words "Credit Agreement" mean the Revolving Credit Agreement dated December 9, 2010, with a credit limit in the amount of Fifty Thousand Dollars ($50,000.00),

The maturity date of this Deed of Trust, which is the date by which all indebtedness under the Credit Agreement and this Deed of Trust is due on November 9, 2015.

Grantor. The word "Grantor" means any and all persons and entities executing this Deed of Trust.

Indebtedness. The word "indebtedness" means all principal and interest and other amounts payable under the Credit Agreement and any amounts expended or advanced by Lender to discharge obligations of Grantor or expenses incurred by Trustee or Lender to enforce obligations of Grantor under this Deed of Trust, together with interest on such amounts as provided in this Deed of Trust. Specifically, without limitation, this Deed of Trust secures a revolving line of credit, which obligates Lender to make advances to Borrower so long as Borrower complies with all the terms of the Credit Agreement. Such advances may be made, repaid, and remade from time to time, subject to the limitation that the total outstanding agreement, any temporary overages, other charges, and any amounts expended or advanced as provided in this paragraph, shall not exceed the Credit Limit as provided in the Credit Agreement.

Notwithstanding the amount outstanding at any particular time, this Deed of Trust secures the total Credit Agreement amount shown above. The unpaid balance of the revolving line of credit may at certain times be lower than the amount shown or zero. A zero balance does not terminate the line of credit or terminate Lender's obligation to advance funds to Borrower.

Personal property. The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessories, parts, and additions to, all replacements of, and substitutions for, any of such property; and together with all proceeds (inducing without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

Related Documents. The words "Related Documents" mean and include without limitation all promissory notes, credit agreements, loan agreements, guaranties, security agreements, mortgages, deeds of trust, and all other instruments and documents, whether now or hereafter existing, executed in connection with borrower's indebtedness to Lender.

Trustee. The word "Trustee" means the Public Trustee of the county where in the Real Property is located.

EXHIBIT 2

3. **PAYMENTAND PERFORMANCE:** Except as otherwise provided in this Deed of Trust, Grantor shall pay to Lender all amounts secured by this Deed of Trust as they become due, and shall strictly and in a timely manner perform all of Grantor's obligations under the Home Equity Line of Credit Agreement and this Deed of Trust.

4. **POSSESSION AND USE:** Until the occurrence of an Event of Default, Grantor may remain in possession and control of the Property, use, operate or manage the Property, and collect any Rents from the Property and shall maintain the Property in good condition and promptly perform all repairs and maintenance necessary to preserve its value.

5. **DUE ON SALE BY LENDER:** Lender may, at its option, have the right to accelerate, that is, declare immediately due and payable all sums secured by this Deed of Trust upon the sale or transfer, without the Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. If Grantor sells or transfers the Real Property without the written consent of Lender, then, prior to acceleration Lender shall give notice to Grantor which shall provide a period of not less than ten (10) days from the date of the notice within which Grantor may pay the sums declared due. If Grantor fails to pay those sums prior to the expiration of such period, Lender may, without further notice or demand on Grantor, invoke any remedies permitted in this Deed of Trust. A "sale or transfer" means the conveyance of Real Property or any right, title or interest therein. Any person to whom all or part of the Real Property is sold or transferred also shall be obligated to give notice to Lender, as provided in this Deed of Trust, promptly after such transfer.

6. **TAXES AND LIENS:** Grantor shall pay when due (and in all events prior to delinquency) all taxes, assessments, charges, fines and impositions levied against or on account of the property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property.

7. **RIGHT TO CONTEST.** Grantor may withhold payment of any tax, assessment or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized, if a lien arises or is filed as a result of nonpayment. Grantor shall, within fifteen (15) days after the lien arises or, if a lien is filed after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest Grantor shall defend itself and Lender and shall satisfy any adverse judgment against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

Notice of Construction and Payment. Grantor shall upon demand furnish to Lender at least fifteen (15) days prior before any work is commenced, any services are furnished or any materials are supplied to the Property if any mechanic's lien, or other lien could be asserted on account of the work or material, and will supply proof of the payment of such work or material.

8. **PROPERTY INSURACE.** Grantor shall maintain insurance on the property with standard extended coverage endorsements for the full insurable value covering all improvements on the Property, with a standard mortgagee clause in favor of Lender. Grantor will notify Lender of any loss or damage to the Property if, in the case of damage, the estimated cost of repair or replacement exceeds $10,000. If damage is extensive and the Property cannot be repaired, Lender is to be reimbursed for the amount of its loss.

9. **WARRANTY AND DEFENSE OF TITLE.** Grantor warrants that Grantor holds good and marketable title of record to the Property, free and clear of all liens and encumbrances except those of record and Grantor has the full right, power and authority to execute and deliver this Deed of Trust to Lender. Grantor will forever defend the title against the lawful claims of all persons.

10. **CONDEMNATION.** If all or part of the property is condemned, Lender may, at its election require that all or any portion of the net proceeds of the award be applied to the indebtedness under the Home Equity Line of Credit Agreement.

11. **EXISTING INDEBTEDNESS.** Grantors hereby declare that there are no existing liens on the Property.

12. **RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of any of Event of Default and at any time thereafter, Lender or Trustee, at its option, may exercise any one or more of the following rights and remedies in addition to any other remedies provided by law:

1. Lender may declare the entire indebtedness immediately due and payable subject to notice as required by applicable law.
2. Lender shall have the right to foreclose, said Property to be sold by Trustee according to the laws of Colorado. The Trustee shall apply all proceeds first to all costs and expenses of the sale, including Trustee's and attorney's fees. The excess shall be paid to the persons legally entitled to the excess.
3. Lender may appoint a Receiver to take possession of the Property, to protect and manage it preceding Foreclosure.
4. Trustee or Lender shall have any other right or remedy provided in this Deed of Trust or the Home Equity Line of Credit Agreement or by law.
5. Lender may exercise its rights to file a notice of election and demand with the Trustee, that all or part of the Property be sold. Lender shall be entitled to bid on any part of the Property at any public sale and be entitled to use any or all of the indebtedness as payment for part or all of the Property.


13. **ATTORNEY'S FEES.** If Lender forecloses or institutes any suit or action to enforce any of the terms of this Deed of Trust, Lender shall be entitled to recover such sums as the law allows up to 15% of the of the unpaid debt, plus all other costs and fees necessary to obtain payment of unpaid indebtedness.

Trustee shall have all of the rights of Lender as set forth in this section.

14. **GRANTOR'S RIGHT TO REINSTATE.** If Grantor meets certain conditions, Grantor shall have the right to have reinforcement of this Deed of Trust discontinued at anytime prior to the earlier of (1) five days before the sale of Property pursuant to any sale allowed in this Deed of Trust. Conditions are that Grantor pay all costs and amounts due to cure any default.

15. **POWERS AND OBLIGATIONS OF TRUSTEE.** The following provisions relating to the powers and obligations of Trustee are part of this Deed of Trust.

1. Trustee shall not be obligated to notify any other lien holder of the Property of the commencement of a foreclosure proceeding or of the commencement of any other action to which Lender may avail itself as a remedy, according to the extent of the applicable laws of Colorado. The trustee shall be obligated to meet all qualifications required for all Trustees in the State of Colorado.

16. **MISCELLANEOUS.**

1. Successors and Assigns. This Deed of Trust shall be binding upon and inure to the benefit of the parties, their successors and assigns.
2. Time is of the Essence in the performance of this Deed of Trust.
3. Waiver of Homestead Exemption. Grantor hereby releases and waives all rights and benefits of the home stead exemption laws of the State of Colorado as to all indebtedness secured by this Deed of Trust.

16. **GOVERNING LAW: SEVERABILITY.** This Agreement is governed by federal law and the laws of the State of Colorado. In the event that any provision or clause of this Agreement or the Deed of Trust conflicts with applicable law, such conflict shall not affect other provisions of this Deed of Trust or the Line of Credit Promissory Note, which can be given without the conflicting provision. To this end, provisions of this Deed of Trust are declared to be severable. In the event of any discrepancies between this Deed of Trust and the Line of Credit Promissory Note shall prevail.

**ACKNOWLEDGMENT** You hereby acknowledge that you have read all the conditions of this Deed of Trust and you acknowledge receipt of a copy of this Deed of Trust. You understand and agree to the terms and conditions in this document

x ______________________
Gregory D. Scott

x Constance L Scott
Constance L. Scott

STATE OF COLORADO
COUNTY OF ALAMOSA

The foregoing instrument was acknowledged, subscribed, and sworn to before me this 10 day of December, 2010 by Gregory D. Scott and Constance L. Scott

______________________
Notary Public

My commission expires 12/06/14

JACQUE ... NOTARY PUBLIC STATE OF CO...

CLARINE C DENTON
201 PIKE AVE
ALAMOSA, CO 81101

FARMERS
INSURANCE

# New Policy Summary

JO ANN EBERHART
504 GALAXY DR
GRAND JUNCTION CO 81506

7/18/2017

Dear Jo Ann Eberhart,

Please review the following information about your new purchase. If any information is incorrect, please contact us.

## Your Policy Details

**Home Policy #99658-32-20**

- Coverage effective: 7/18/2017 12:01 AM through 7/18/2018 12:01 AM
- Property location:
  - 5417 County Road 5.4 S Alamosa, CO 81101-9771

## Your Farmers Agent

**Clarine C Denton**
201 Pike Ave
Alamosa, CO 81101
719-589-0747
Fax: 719-589-4617
cdenton@farmersagent.com

## Customer Service

1-800-FARMERS or 1-800-327-6377

## Online

Manage your policies online at **farmers.com**, where you can:

- View and pay your bill
- View Policy documents
- Enroll in Paperless
- Print Evidence of Insurance

## What Happens Next

**Document and signature requirements**

To continue receiving certain discounts and coverage selections that have been included with your policy, you must provide the documents below by 8/12/2017. Failure to submit the required documents may result in changes to your policy or premium.

Please provide the following documents directly to us:

- Application/Memorandum for Fire Insurance
- Subscription Agreement

If you've recently provided these documents, you can disregard this request. Your agent may contact you if additional documents are required.

## Your Billing & Payment

**This is not a bill.** Your bill with the amount due will be mailed separately.

**Billing Account #A630845725**

- Home Policy #99658-32-20
  - 12-month policy premium and fees: $926.69
- Payment Information
  - Monthly: Your next payment of $71.73 is due on 8/18/2017 for the policy(s) listed above.

EXHIBIT 3

**farmers.com**

**To file a claim, call**
1-800-435-7764

**Questions?**
Call your agent Clarine C Denton at 719-589-0747 or email cdenton@farmersagent.com

**Manage your account:**
Go to www.farmers.com to access your account any time!

25-5029 2-15

This document cannot be used as Evidence of Insurance

**Page 1 of 2**

**New Policy Summary** (continued)

- This payment plan includes a service charge per installment not included in the payment amount above. Ask your agent about payment and billing options that avoid service charges and save you money.

## *Your Account Communication Preferences*

| *Policy* | *Policy Documents* | *Evidence of Insurance* | *Billing Statements* | *Signatures/Documents* |
|---|---|---|---|---|
| Home Policy #99658-32-20 | By mail and online | Upon Request | By mail and online | Provide documents to agent |

**Thank you for choosing Farmers!**
We appreciate your business, and are grateful for the opportunity to serve your insurance needs. Please don't hesitate to contact us for assistance if you have any questions.

Sincerely,

Farmers Insurance
**Clarine C Denton**
719-589-0747
cdenton@farmersagent.com

**farmers.com**

**To file a claim, call**
1-800-435-7764

**Questions?**
Call your agent Clarine C Denton at 719-589-0747 or email cdenton@farmersagent.com

**Manage your account:**
Go to www.farmers.com to access your account any time!

25-5029 2-15

This document cannot be used as Evidence of Insurance **Page 2 of 2**

# ALAMOSA COUNTY TREASURER

## Treasurers Receipt
## For Tax Collections
## Report of Multiple Transactions
## Page Number 1

**For Register Number 3** **Receipt Number 5557 To 5560** **08/28/2017**

Paid By Eberhart Family Trust

| Receipt Number | Trans. Code | Tax Year | Property Number | Book /Fund | Cert. /Account | Amount Paid | Actual Value |
|---|---|---|---|---|---|---|---|
| 5557 | Normal | 2013 | 528725303010 | | | 574.08 | 143,777 |
| 5558 | Normal | 2014 | 528725303010 | | | 1,164.24 | 143,777 |
| 5559 | Normal | 2015 | 528725303010 | | | 1,069.59 | 143,777 |
| 5560 | Normal | 2016 | 528725303010 | | | 959.69 | 143,777 |

Totals Due: 3,767.60
Change Returned 0.00
Comments:

Tendered: 3,767.60
Using: ck01079

LOIS WIDHALM
ALAMOSA COUNTY TREASURER
8999 INDEPENDENCE WAY ,STE 104
P. O. BOX 659
ALAMOSA, COLORADO 81101
(719) 589-3626

EXHIBIT 4

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| In re | ) |
| | ) |
| GREGORY D. SCOTT, | ) Case No. 17-16886-EEB |
| CONSTANCE L. SCOTT, | ) Chapter 13 |
| Debtors. | ) |
| | ) |
| EBERHART FAMILY TRUST, | ) |
| Movant, | ) |
| v. | ) |
| | ) |
| GREGORY D. SCOTT, | ) |
| CONSTANCE L. SCOTT, | ) |
| DOUGLAS B. KEIL, Chapter 13 Trustee, | ) |
| Respondents. | ) |

**AFFIDAVIT OF KENNETH J. BUECHLER**

KENNETH J. BUECHLER, being first duly sworn and deposed, states as follows:

1. I am the Attorney for the Eberhart Family Trust which has filed a Renewed Motion for Relief from Stay in the above-referenced case, and I have personal knowledge of the facts stated herein.

2. I hereby certify that the Trust or its agents conducted a prior diligent search of the information data banks of the records of the Army, Navy, Air Force, Coast Guard, Marines, Public Health Service, and commissioned officer records of the National Oceanic and Atmospheric Administration, under the provisions of the Servicemembers Civil Relief Act of 2003. I further certify that the Trust or its agents did not find any records that the Debtors are currently in active service. A copy of the e-mails of the search results from the SCRA Centralized Verification Service dated May 21, 2014 is attached hereto.

**FURTHER AFFIANT SAYETH NAUGHT.**

Kenneth J. Buechler

STATE OF COLORADO )
) ss.
CITY & COUNTY OF DENVER )

On this 1st day of September, 2017, before me personally came Kenneth J. Buechler, known to me to be the individual who executed the foregoing Affidavit and who acknowledged execution of the same.

Sharon E Fox
Notary Public

SHARON E. FOX
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 19834006784
MY COMMISSION EXPIRES JULY 28, 2021

EXHIBIT 5

**Sharon Fox**

**From:** Support@ServicemembersCivilReliefAct.com
**Sent:** Wednesday, May 21, 2014 12:21 PM
**To:** Sharon Fox
**Subject:** SCRA Verification Results - Servicemembers Civil Relief Act Centralized Verification Service

| Name | Customer | Case | Tracking Number |
|---|---|---|---|
| SCOTT, GREGORY DWAYNE | | | 201405213828 |

Based upon name and social security number you have furnished, as of 05/21/2014 ("Active Duty Status Date"), there is no information in the Department of Defense Manpower Data Center ("DMDC") that indicates that the individual is in Active Duty Status.

Upon searching the data banks of the Department of Defense Manpower Data Center, based upon the information that you provided, the above is the status of the individual ("Subject") on the Active Duty Status Date, as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard). This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for active duty.

Servicemembers Civil Relief Act Centralized Verification Service

By: Roy L. Kaufmann
Roy L. Kaufmann, Authorized Signatory
Date: 05/21/2014
For support: Support@ServicemembersCivilReliefAct.com or Support@SCRA.com

This report is based upon information that you have provided. Providing an erroneous name, social security number, date of birth or other information may cause an erroneous report to be provided. If you obtain further information about the person you may resubmit your request and we will provide new status report for that query. This response reflects status as of Active Duty Status Date only. For historical information, please resubmit your inquiry with a different Active Duty Status Date or contact the individual Military Service SCRA points-of-contact:https://www.ServicemembersCivilReliefAct.com/live/link/points-of-contact.php . If you have evidence that the individual is/was on active duty as of the Active Duty Status Date and you fail to obtain this additional information, punitive provisions of the SCRA may be invoked against you. See 50 USC Section 521(c).

The Servicemembers Civil Relief Act Centralized Verification Service processes SCRA verifications through the Defense Manpower Data Center (DMDC) which is an organization of the United States Department of Defense (DoD) that maintains the Defense Enrollment and Eligibility Reporting System (DEERS) database which is the official source of data on eligibility for military care and other eligibility systems.

This response reflects the following information: (1) the Active Duty status as of the Active Duty Status Date, (2) Whether the individual left Active Duty status within 367 days preceding the Active Duty Status Date, and (3) Whether the individual or his/her unit received early notification to report for active duty on the Date of Interest. Records do not predate September 30, 1985.

**More information on Active Duty Status :**

Active duty status as reported in this report is defined in accordance with 10 USC Section 101(d) (1). Prior to 2010 only some of the active duty periods less than 30 consecutive days in length were available. In the case of a member of the National Guard, this includes service under a call to active service authorized by the President or the Secretary of Defense under 32 USC Section 502(f) for purposes of responding to a national emergency declared by the President and supported by Federal funds. All Active Guard Reserve (AGR) members must be assigned against an authorized mobilization position in the unit they support. This includes Navy Training and Administration of the Reserves (TARs), Marine Corps Active Reserve (ARs) and Coast Guard Reserve Program Administrators (RPAs). Active Duty status also applies to a Uniformed Service member who is an active duty commissioned officer of the U.S.Public Health Service or the National Oceanic and Atmospheric Administration (NOAA Commissioned Corps).

**Coverage Coverage Under the SCRA is broader in Some Cases.**

Coverage under SCRA is broader in some cases and includes some categories of persons on active duty for purposes of the SCRA who would not be reported as on Active Duty under this report.

Many times orders are amended to extend the period of active duty, which would extend SCRA protections. Persons seeking to rely on this certification should check to make sure the orders on which SCRA protections are based have not been amended to extend the inclusive dates of service. Furthermore, some protections of the SCRA may extend to persons who have received orders to report for active duty or to be inducted, but who have not actually begun active duty or actually reported for induction. The Last Date on Active Duty entry is important because a number of protections of SCRA extend beyond the last

**Sharon Fox**

---

**From:** Support@ServicemembersCivilReliefAct.com
**Sent:** Wednesday, May 21, 2014 12:21 PM
**To:** Sharon Fox
**Subject:** SCRA Verification Results - Servicemembers Civil Relief Act Centralized Verification Service

| Name | Customer | Case | Tracking Number |
|---|---|---|---|
| SCOTT, CONSTANCE L. | | | 201405213829 |

Based upon name and social security number you have furnished, as of 05/21/2014 ("Active Duty Status Date"), there is no information in the Department of Defense Manpower Data Center ("DMDC") that indicates that the individual is in Active Duty Status.

Upon searching the data banks of the Department of Defense Manpower Data Center, based upon the information that you provided, the above is the status of the individual ("Subject") on the Active Duty Status Date, as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard). This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for active duty.

Servicemembers Civil Relief Act Centralized Verification Service

By: Roy L. Kaufmann
Roy L. Kaufmann, Authorized Signatory
Date: 05/21/2014
For support: Support@ServicemembersCivilReliefAct.com or Support@SCRA.com

This report is based upon information that you have provided. Providing an erroneous name, social security number, date of birth or other information may cause an erroneous report to be provided. If you obtain further information about the person you may resubmit your request and we will provide new status report for that query. This response reflects status as of Active Duty Status Date only. For historical information, please resubmit your inquiry with a different Active Duty Status Date or contact the individual Military Service SCRA points-of-contact:https://www.ServicemembersCivilReliefAct.com/live/link/points-of-contact.php . If you have evidence that the individual is/was on active duty as of the Active Duty Status Date and you fail to obtain this additional information, punitive provisions of the SCRA may be invoked against you. See 50 USC Section 521(c).

The Servicemembers Civil Relief Act Centralized Verification Service processes SCRA verifications through the Defense Manpower Data Center (DMDC) which is an organization of the United States Department of Defense (DoD) that maintains the Defense Enrollment and Eligibility Reporting System (DEERS) database which is the official source of data on eligibility for military care and other eligibility systems.

This response reflects the following information: (1) the Active Duty status as of the Active Duty Status Date, (2) Whether the individual left Active Duty status within 367 days preceding the Active Duty Status Date, and (3) Whether the individual or his/her unit received early notification to report for active duty on the Date of Interest. Records do not predate September 30, 1985.

**More information on Active Duty Status :**

Active duty status as reported in this report is defined in accordance with 10 USC Section 101(d) (1). Prior to 2010 only some of the active duty periods less than 30 consecutive days in length were available. In the case of a member of the National Guard, this includes service under a call to active service authorized by the President or the Secretary of Defense under 32 USC Section 502(f) for purposes of responding to a national emergency declared by the President and supported by Federal funds. All Active Guard Reserve (AGR) members must be assigned against an authorized mobilization position in the unit they support. This includes Navy Training and Administration of the Reserves (TARs), Marine Corps Active Reserve (ARs) and Coast Guard Reserve Program Administrators (RPAs). Active Duty status also applies to a Uniformed Service member who is an active duty commissioned officer of the U.S.Public Health Service or the National Oceanic and Atmospheric Administration (NOAA Commissioned Corps).

**Coverage Coverage Under the SCRA is broader in Some Cases.**

Coverage under SCRA is broader in some cases and includes some categories of persons on active duty for purposes of the SCRA who would not be reported as on Active Duty under this report.

Many times orders are amended to extend the period of active duty, which would extend SCRA protections. Persons seeking to rely on this certification should check to make sure the orders on which SCRA protections are based have not been amended to extend the inclusive dates of service. Furthermore, some protections of the SCRA may extend to persons who have received orders to report for active duty or to be inducted, but who have not actually begun active duty or actually reported for induction. The Last Date on Active Duty entry is important because a number of protections of SCRA extend beyond the last

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLORADO**

In re

GREGORY D. SCOTT,
CONSTANCE L. SCOTT,
Debtors.

Case No. 17-16886 EEB
Chapter 13

EBERHART FAMILY TRUST,
Movant,

v.

GREGORY D. SCOTT,
CONSTANCE L. SCOTT,
DOUGLAS B. KEIL, Chapter 13 Trustee,
Respondents.

**NOTICE OF MOTION FOR RELIEF FROM STAY AND OPPORTUNITY FOR HEARING PURSUANT TO 11 U.S.C. §362(d)**

**OBJECTION DEADLINE: SEPTEMBER 21, 2017**

YOU ARE HEREBY NOTIFIED that a Motion for Relief From Stay has been filed, a copy of which is attached hereto.

A hearing on the motion has been set for **September 28, 2017, at 1:30 p.m. in Courtroom F**, at the U.S. Custom House, 721 19th Street, Denver, Colorado 80202. The hearing will be conducted in accordance with the provisions of L.B.R. 4001-1.

IF YOU DESIRE TO OPPOSE THIS MOTION, you must file with this Court a WRITTEN OBJECTION to the motion on or before the objection deadline stated above and serve a copy upon the movant's attorney whose address is listed below.

If you file an objection, you are REQUIRED to comply with L.B.R. 4001-1 regarding hearing procedures, including (1) the timely submission and exchange of witness lists and exhibits, and (2) attendance at the above-scheduled hearing in person or through counsel, if required.

IF YOU FAIL TO FILE AN OBJECTION, the scheduled hearing will be vacated and an order granting the relief requested may be granted without further notice to you.

DATED this 1st day of September, 2017.

Respectfully submitted,
BUECHLER & GARBER, LLC

*/s/ Kenneth J. Buechler*

Kenneth J. Buechler, #30906
999 18th Street, Suite 1230-S
Denver, Colorado 80202
Tel: 720-381-0045/Fax: 720-381-0382
ken@bandglawoffice.com